THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:08-CV-597-BO

| | |
|---|---|
| TEAM 7, LLC, BALLISTIC PROTECTION TECHNOLOGIES, LLC, BRAZZOE, LLC, CHESTER SECHREST, PAUL CARTER, GERALD CARTER, TONY BELL, and PLATINUM INVESTMENTS, LLC,<br>              Plaintiffs,<br>v.<br><br>PROTECTIVE SOLUTIONS, INC., DAVID DUNCAN, BALLISTIC SOLUTION TECHNOLOGIES, LLC, R. LUPTON PITTMAN, III, and PROTECTIVE ENTERPRISES, LLC,<br>              Defendants. | <u>O R D E R</u> |

This matter is before the Court on various motions filed by Defendants Protective Solutions, Inc., Protective Enterprises, LLC, and David Duncan (collectively "Protective Defendants"). These motions seek to exclude the reports of Plaintiffs' experts, Mr. Perry L. Grady ("Grady") [DE-67], Mr. R. Wayne Hutchins ("Hutchins") [DE-77], and Mr. James A. Larsen ("Larsen") [DE-69] and to preclude Grady, Hutchins and Larsen from testifying in the form of an opinion or otherwise against the Protective Defendants at any hearing or trial in this cause. For the following reasons, the Protective Defendants' motions are DENIED.

## BACKGROUND

Plaintiffs filed the complaint in this case on December 5, 2008, asserting numerous causes of action based on allegations that Defendant Protective Solutions, Inc. ("PSI"), as well as Defendant Pittman and his company, Defendant Ballistic Solution Technologies, LLC ("BST"), unlawfully manufactured, marketed, and sold ballistic blankets and other armor products that are the same as or derived from the blanket allegedly invented by Plaintiffs Paul and Gerald Carter.

(Compl. ¶¶ 71-76, 83-86.)

The Carters are the named inventors of U.S. Patent No. 7,389,718B1 ("the '718 Patent"). The '718 Patent claims a versatile ballistic blanket that can be carried by an individual. Plaintiffs allege, *inter alia*, that Defendants PSI, Pittman, and BST worked in concert to sell large quantities of ballistic blankets as well as other armor products, without Plaintiffs' permission, in violation of a Non- Disclosure/Non-Circumvention Agreement alleged in the complaint, and that the Defendants, including but not limited to the Protective Defendants, thereby infringed the '718 Patent. (Compl. ¶¶ 87-148.)

In support of Plaintiffs' infringement allegations, and in defense of Defendants' allegations of the invalidity of the '718 patent, Plaintiffs' counsel served the expert report of Perry L. Grady (the "Grady report") on August 17, 2009. Grady was subsequently deposed on September 9 and 28, 2009. Discovery closed on September 30, 2009 and the deadline to supplement expert reports after the Markman ruling expired on June 17, 2010. [DE-37 at 3-4; DE-38].

In support of their claims of lost profits, Plaintiffs' counsel hired R. Wayne Hutchins, a Certified Public Accountant, "to estimate the amount of lost profits that Team 7, LLC incurred by the sale of spall liners/ballistic blankets produced and sold by Protective Solutions, Inc. and others." (Report of R. Wayne Hutchins ("Hutchins Rep.")) On August 18, 2009, Hutchins submitted a report calculating Plaintiffs' alleged lost profits. (Hutchins Rep. at 1-2, and its Ex. A.).

In further support of their claims, Plaintiffs' counsel served the expert report of James A. Larsen II ("Larsen") on Defendants on August 19, 2009. On September 8 and 28, 2009, the

2

Protective Defendants deposed Larsen.

The Protective Defendants now move this Court for an Order striking the reports of Grady, Hutchins and Larsen from the record and precluding Grady, Hutchins and Larsen from testifying in this case. [DE-67; DE-77; DE-69]. The Protective Defendants assert three arguments in support of their motions. They contend the three aforementioned expert reports should be stricken and the putative experts' testimony barred because the proffered opinions fail to satisfy the requirements of either (1) Federal Rule of Civil Procedure 26, (2) Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993) and its progeny, or (3) Rule 702 of the Federal Rules of Evidence.

## The Legal Standards

I. <u>Requirements of Expert Reports Under Federal Rule of Civil Procedure 26</u>

Federal Rule of Civil Procedure 26 (a) governs the form and substance of expert reports. Rule 26(a)(2)(B) provides that each party disclose the identity and report of any witness who is retained to provide expert testimony. Fed. R. Civ. P. 26(a)(2)(B). The report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the data or other information considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness' qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition;
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

3

Fed. R. Civ. P. 26(a)(2)(B).

In scrutinizing a Rule 26(a)(2)(B) report, the Court must ensure that the report is "sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced." Reed v. Binder, 165 F.R.D. 424, 429 (D.N.J.1996). The report must "set forth the substance of the direct examination of the expert witness," and "disclose the data and other information considered by the expert." (Advisory Committee Notes to the 1993 Amendments to Rule 26.) Furthermore, "[t]he report must provide the substantive rationale in detail with respect to the basis and reasons for the proffered opinions. It must explain factually why and how the witness has reached them." Hilt v. SFC, Inc., 170 F.R.D. 182, 185 (D.Kan.1997). Rule 26(a)(2)(B)'s requirement for complete explanation of an expert's opinions eschews the disclosure of 'sketchy and vague' expert information. See (Advisory Committee Notes to the 1993 Amendments to Rule 26.) (lamenting that "[t]he information disclosed under [pre-amended Rule 26(a)(2)(B)] about the "substance" of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition of the witness.")

II.  Admissibility of Expert Reports under *Daubert* and Federal Rule of Evidence 702

Federal Rule of Civil Procedure 26 is not the sole provision regulating the form and substance of expert opinions in federal court. The introduction of expert opinion testimony is further governed by Federal Rule of Evidence 702. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the

testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Under Rule 702, trial judges act as gatekeepers to "ensure that any and all scientific testimony . . . is not only relevant, but reliable." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993). In conducting a Daubert analysis, the trial court asks two questions: (1) is the proffered scientific evidence is valid and reliable, and (2) will the testimony aid the trier of fact in deciding the ultimate issues in the case? United States v. Barnette, 211 F.3d 803, 815 (4th Cir.2000).

A party's Daubert objection to proffered expert testimony or reports does not, however, convert a trial judge into the finder of fact. Obviously, expert testimony is subject to scrutiny by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." Daubert, 509 U.S. at 596. Thus, the pre-trial Daubert inquiry does not call for the trial judge's consideration of whether the proffered evidence is correct or whether it is sufficient to allow a verdict in favor of the proponent. Instead, pursuant to the court's "gatekeeping" role, the court focuses solely on whether the testimony is reliable and can aid the finder of fact at trial. See Barnette, 211 F.3d at 815.

## ANALYSIS

I. <u>The Grady Report</u>

With these principles in mind, the Court turns to the Protective Defendants' instant attack on the Grady report. The Protective Defendants contend the Grady report fails to satisfy the requirements of either (1) Federal Rule of Civil Procedure 26, (2) Daubert v. Merrell Dow

Pharms., Inc., 509 U.S. 579 (1993) and its progeny, or (3) Rule 702 of the Federal Rules of Evidence. The Protective Defendants' contentions are without merit.

A. The Grady Report Satisfies the Requirements of Federal Rule of Civil Procedure 26

The Grady report satisfies the requirements of Federal Rule of Civil Procedure 26. The Grady report includes two sections that independently address (1) the validity of the '718 Patent, and (2) the Protective Defendants' alleged infringement of the '718 Patent. In the validity section, Grady analyzes in detail the validity of the '718 Patent in light of certain patent and non-patent prior art, concluding that none of the prior art invalidates the '718 Patent. In the infringement section, Grady concludes that fourteen products (the "Accused Products") produced by the Protective Defendants infringe claims 1, 16, 19 and 20-22 of the '718 Patent. (Grady Rep. 1-19).

Having reviewed the exhaustive filings in this case, the Court finds that the Grady report, in conjunction with the Protective Defendants' comprehensive deposition inquiry into Grady's opinions, the basis and reasons therefore, and the data or other information Grady considered in formulating his opinions, have given the Protective Defendants a full and complete understanding of Dr. Grady's infringement and validity analyses and conclusions. The Grady report provides the Protective Defendants with an adequate opportunity to prepare for cross-examination, to scrutinize, and to rebut Grady's opinions at trial. The Grady report does not violate Rule 26.

B. The Grady Report Satisfies the Requirements of *Daubert* and Its Progeny and Federal Rule of Evidence 702

Next, the Protective Defendants contend the Grady report should be stricken because it

fails to satisfy the requirements of Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993) and its progeny and Rule 702 of the Federal Rules of Evidence. The Defendants' contentions, again, are without merit.

      1.      The Grady Report's Infringement Section Survives Scrutiny Under *Daubert* and Its Progeny and Federal Rule of Evidence 702

First, with respect to the Grady report's infringement section, the sole criticism the Protective Defendants assert is that Grady "did not inspect, analyze, or test the 'ballistic core' used in the allegedly infringing products." (Def.'s Brief, p. 20-22.) However, in his deposition, Grady makes clear that he did not inspect, analyze, or test the ballistic core of the Protective Solutions' products because the Plaintiffs do not assert in this action that the use of a ballistic core comprised of anti-ballistic fiber inside an inner housing as being a unique claim. (Grady Dep. p. 71.) Dr. Grady points out that "the [outer] housing is the most important part of the patent." (Grady Rep,, p. 72.) Grady testified at his deposition that he does not consider the ballistic core to be a crucial element of the patent in his infringement analysis, Grady Report, pp. 73, because the ballistic core could have been "anyone of many, many different combinations" of ballistic fibers (Grady Rep., p.73.) An inspection, analysis, or test of the ballistic cores used in the allegedly infringing products would, therefore, add nothing of relevance to Dr. Grady's infringement analysis (Grady Rep., p.73.)

      2.      The Grady Report's Validity Section Survives Scrutiny Under *Daubert* and Its Progeny and Federal Rule of Evidence 702

Next, with respect to the Grady report's validity section, the Protective Defendants argue that that section does not satisfy the requirements of Rule 702 of the Federal Rules of Evidence and Daubert and its progeny. because Grady does not "construe the claims" of the '718 Patent

7

and because Grady does not identify the products he reviewed from the listed companies and websites.

With respect to the Protective Defendants' first contention, Grady did not construe or define the terms of the claims of the '718 patent because he correctly determined that doing so would be unnecessary and unproductive. (Grady Dep., pp. 62-64.) Grady stated in his deposition that, in his opinion, the terms used in the claims of the '718 Patent were obvious, every day terms that did not require further definition. (Grady Dep., pp. 62-63.) Grady can hardly be expected to construe every plain and unambiguous word of a claim when those words are, as a matter of law, given their ordinary and customary meaning. Phillips v. AWHCorp., 415 F.3d 1303, 1312 (Fed. Cir. 2005); Vitronics Corp. v. Conceptronics, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1966).

With respect to Defendants' second contention regarding the validity section–that Grady failed to identify the products from those companies and websites that he analyzed–the Court finds the Protective Defendants' arguments unavailing. Grady is not required to ferret out specific products that might invalidate the '718 Patent where the Protective Defendants bear the burden of production on that issue[1] and where their only assertions of invalidity rest on vague allusions to certain commercial references and manufacturers as opposed to specific products.

In sum, the Court finds the Grady report and Grady's proposed testimony, for purposes of a Daubert and Federal Rule of Evidence 702 analysis, are relevant and reliable to the material

---

[1] See, e.g., Clock Spring L.P. v. Wrapmaster, Inc., 560 F.3d 1317, 1324 (Fed. Cir. 2010) (holding that "[f]or a challenger to prove a patent claim invalid under § 102(b), the record must show by clear and convincing evidence that the claimed invention was in public use before the patent's critical date.")

8

issues in this case. Regardless of the weight the fact finder will assign to Grady's proffered opinions, the fact finder will be aided by the testimony the Plaintiffs propose to offer through Grady. The parties do not legitimately dispute Grady's qualifications to render the opinions at issue. Moreover, having scrutinized Grady's report, the Court finds that Grady's testimony is based upon sufficient facts or data, it is the product of reliable principles and methods, and Grady has applied the principles and methods reliably to the facts of the case. The Protective Defendants' motion to strike the Grady report and to preclude Grady from testifying in this action under Daubert and Federal Rule of Evidence 702 is, accordingly, without merit and must be denied.

II. The Hutchins Report

Next, the Court turns to the Protective Defendants' attack on the Hutchins report. The Protective Defendants contend that the Hutchins report fails to satisfy the requirements of either (1) Federal Rule of Civil Procedure 26, (2) Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993) and its progeny, or (3) Rule 702 of the Federal Rules of Evidence. The Protective Defendants' contentions are without merit.

    A.    The Hutchins Report Satisfies the Requirements of Federal Rule of Civil Procedure 26

The Hutchins report satisfies the requirements of Federal Rule of Civil Procedure 26. Having reviewed the exhaustive filings in this case, the Court finds that the Hutchins report, in conjunction with the Protective Defendants' comprehensive deposition inquiry into Hutchins' opinions, the basis and reasons therefore, and the data or other information Hutchins considered in formulating his opinions, have given the Protective Defendants a full and complete

9

understanding of Dr. Hutchins opinions regarding Plaintiffs' alleged lost profits. The Hutchins report provides the Protective Defendants with an adequate opportunity to prepare for cross-examination, to scrutinize, and to rebut Hutchins' opinions at trial. Although the Protective Defendants may disagree with his conclusions, they cannot legitimately claim the Hutchins report is rife with "sketchy" and "vague" information that would warrant the report's exclusion. Moreover, even assuming minor deficiencies are present in the Hutchins' report, those problems would certainly be deemed "harmless" and exclusion of the report would therefore be improper. See Fed. R. Civ. P. 37(c)(1). The Hutchins' report does not violate Rule 26.

    B.    The Hutchins Report Satisfies the Requirements of *Daubert* and Its Progeny and Federal Rule of Evidence 702

The Protective Defendants contend that the Hutchins report must be stricken because it violates Daubert and its progeny and Rule 702 of the Federal Rules of Evidence. They contend that the report is based upon inaccurate methodology, speculative assumptions, is not supported by the evidence of record, and fails to prove lost profits as a matter of law. The Protective Defendants' contentions are without merit.

Having reviewed the Hutchins report, the Protective Defendants' motion and memorandum in support of striking the report, and the Plaintiffs' memorandum in opposition, the Court finds that the Hutchins report does not violate Daubert and its progeny or Federal Rule of Evidence 702.

The Hutchins report is reliable insofar as Hutchins arrives at his conclusions based on the information made available to him by the Protective Defendants. Mr. Hutchins attempted to calculate the profits earned by the Protective Defendants on the sale of the BPT ballistic blankets

10

to MARTA and the PMLAV (Hutchins Rep. p. 2.) In doing so, he used the only information and documentation that the Plaintiffs had available to them at the time. Mr. Hutchins used the manufacturing costs (with mark up) set forth on the Protective Solutions letter dated March 13, 2006. This was the only estimate or statement of manufacturing costs that Mr. Hutchins had to work with and, based on this information, Hutchins applied the data he had available in a methodologically sound manner.

Moreover, the Protective Defendants cannot claim that the alleged speculative nature of Mr. Hutchins' opinions are grounds for exclusion when any alleged speculation has been caused directly by their failure, refusal, or inability to provide accurate information and documentation from which Mr. Hutchins could provide a more accurate calculation of costs and profit margins.

The Hutchins report will likely aid the finder of fact. Given the technical and specialized nature of accountancy, the Hutchins' report and his opinions at trial will likely assist the fact finder in evaluating the evidence of record, resolving discrepancies in that evidence, and applying the law to that evidence.

The Court finds that because the Hutchins report is based upon sufficient facts or data, the report is the product of reliable principles and methods, and Hutchins has applied the principles and methods reliably to the facts of the case, the report does not violate rule 702 of the Federal Rules of Evidence.

III. The Larsen Report

Next, the Court turns to the Protective Defendants' attack on the Larsen report. The Protective Defendants contend that the Larsen report fails to satisfy the requirements of either (1) Federal Rule of Civil Procedure 26, (2) Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579

11

(1993) and its progeny, or (3) Rule 702 of the Federal Rules of Evidence. The Protective Defendants' contentions are without merit.

> A. The Larsen Report Satisfies the Requirements of Federal Rule of Civil Procedure 26

Having reviewed the exhaustive filings in this case, the Court finds that the Larsen report, in conjunction with the Protective Defendants' comprehensive deposition inquiry into Larsen's opinions, the basis and reasons therefore, and the data or other information Larsen considered in formulating his opinions, have given the Protective Defendants a full and complete understanding of Larsen's analyses and conclusions. The Larsen report provides the Protective Defendants with an adequate opportunity to prepare for cross-examination, to scrutinize, and to rebut Larsen's opinions at trial. Obviously, the Protective Defendants are entitled to disagree with Larsen's conclusions. However, they cannot legitimately claim the Larsen report is rife with "sketchy" and "vague" information that would warrant the report's exclusion. Moreover, even assuming minor deficiencies are present in the Larsen report, those problems would certainly be no more than "harmless," and exclusion of the report would, therefore, be improper. See Fed. R. Civ. P. 37(c)(1). The Larsen report does not violate Rule 26.

> B. The Larsen Report Satisfies the Requirements of *Daubert* and its Progeny and Federal Rule of Evidence 702

The Protective Defendants contend that the Larsen report must be stricken because it violates Daubert and its progeny and Rule 702. Here, the Protective Defendants' entire contention as to why Mr. Larsen's report should be excluded under Rule 702, Fed. R. Civ. P., and Daubert, turns on their assertion that Larsen's opinions are based upon unsupported factual assumptions. (Def.s' Br. pp. 18-27.)

12

The Court finds, however, that Larsen's report is sufficiently reliable and helpful to the finder of fact to withstand the Protective Defendant's motion. To be sure, Larsen's explanation of his conclusions is brief. The vast majority of the report is composed of the various sources Larsen consulted in arriving at his conclusions. But because the Larsen report is based upon sufficient facts or data, the report is the product of reliable principles and methods, and Larsen has applied the principles and methods reliably to the facts of the case, the report does not violate rule 702 of the Federal Rules of Evidence. Any qualms the Protective Defendants have with the Larsen report and Mr. Larsen's analysis can and should be raised via a vigorous cross-examination.

## CONCLUSION

For the above stated reasons, the Protective Defendants' motions [DE-67; DE-69; DE-77] are DENIED.

SO ORDERED.

This, the 13 day of December, 2010.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

13